# UNITED STATES DISTRICT COURT

for the
Eastern District of Pennsylvania

[Plaintiff] Dwayne Shaw pro se, is an adult male, residing
in the City of Philadelphia, where his minor sons were
illegally seized and unlawfully detained by the
[Defendants], under the color of state law.

*v.*    Case No:

**- against -**

[Defendant] 1. the City of Philadelphia, et al., a municipal corporation responsible for the Philadelphia Department
of Human Services (DHS), its child welfare agency. [Defendant] 2. the Commonwealth of Pennsylvania, et. al., a
sovereign state entity, responsible for the Pennsylvania Department of Human Services, a state agency, overseeing
the child welfare system of the Commonwealth of Pennsylvania.

## PRO SE PLAINTIFF'S 42 U.S.C. § 1983 COMPLAINT FOR DEPRIVATION OF PARENTAL RIGHTS UNDER COLOR OF LAW AGAINST THE CITY OF PHILADELPHIA, ET. AL., AND THE COMMONWEALTH OF PENNSYLVANIA, ET AL.,

**Cause of Action:**

1. Pursuant to § 1983, [Defendants] named herein are charged with deprivation of parental rights
under the color of state law, resulting in the illegal seizures and wrongful detention of the
[Plaintiff's] minor sons, Friend, Brandon, (DHS) case # DP-96570-97, and Shaw, Omar, (DHS)
case # DP-45590-1997.

2. Pursuant to § 1983, [Defendants] named herein are charged with reckless disregard, gross
negligence, and entity liability for the unlawful actions of their agents and employees, acting
under color of state law, and its resultant injuries.

# JURY DEMAND

Plaintiff demands a trial by jury on all issues triable as of right by a jury.

## INTRODUCTION:

3.  Pursuant to § 1983, Pro se Dwayne Shaw [Plaintiff], brings this action against the City of
    Philadelphia, et al, and the Commonwealth of Pennsylvania, et al, [Defendants], for
    systemic breaches of his constitutional rights, under the color of state law.

4. Pursuant to § 1983, this action arises from [Defendants] entity liability for the illegal seizures and unlawful detention of [Plaintiff's] minor sons Friend, Brandon and Shaw, Omar under the color of state law, resulting in denial of procedural and substantive due process, fraudulent concealment, malicious prosecution, official misconduct, failure to unify, and defamation "per se".

## I.    Parties in this complaint:

Plaintiff:

Name: Dwayne Shaw

Street Address: 3017 Frankford Avenue

County: Philadelphia: City Philadelphia

State & Zip Code: 19134

Telephone Number: (267) 407-3271

Email: shawdwayne3@gmail.com


Defendant: No.1

Name: Kimberli Ali, in their official capacity of Commissioner of the Philadelphia Department of Human Services (DHS)

Street Address: 1515 Arch Street #15

County: Philadelphia, City: Philadelphia

State & Zip Code: Pennsylvania 19102

Email: dhs.commissioner@phila.gov


Defendant: No. 2

Name: Dr. Val Arkoosh, in their official capacity of Secretary of Human Services, the Commonwealth of Pennsylvania

Street Address: 401 North Street, Room 302

County: Dauphin, City: Harrisburg

State & Zip Code: Pennsylvania, 17120

Email: varkoosh@pa.gov


## II. Basis for Jurisdiction and Venue:

This Court has jurisdiction under (**28 U.S.C. § 1331**) (federal question) and (**28 U.S.C. § 1343**) (civil rights violations). Venue is proper in the Eastern District of Pennsylvania under (**28 U.S.C. § 1391**), as the negligent acts of omission, commission and deprivation giving rise to this claim occurred in Philadelphia, Pennsylvania. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

This federal question arises upon Defendants' entity liability for institutional malfeasance and systemic breach of the following constitutional amendments and statutory rights, pursuant to 42 U.S.C. § 1983—**[Article I, Section 11], [The Fourteenth Amendment], [The Fourth**

Amendment], [18 U.S.C. § 241], [18 U.S.C. § 242], [18 U.S.C. § 1001(a)(1)–(2], [18 U.S.C. § 1623], [18 U.S.C. § 1510], [18 U.S.C. § 1512], [18 U.S.C. § 2], [18 U.S.C. §3], [18 U.S.C. § 1503], [18 U.S.C. § 1513], [18 U.S.C. § 1519], [The Sixth Amendment], [34 U.S.C. § 12601], [28 U.S.C. § 517]

Each of these constitutional amendments, statutory rights directly supports claims of civil rights violations, systemic misconduct, and the need for accountability in the unlawful actions alleged in this case.

## C.    Statement of Facts

1.    On or about the summer of 1997, in the City of Philadelphia, Pennsylvania, Dwayne Shaw ["Plaintiff"] and Ms. Yvonda Friend (the children's mother) agreed that Plaintiff would assume physical custody of their minor sons, Brandon Friend and Omar Shaw, during Ms. Friend's one-year term of incarceration.

2.    Plaintiff lawfully prepared to receive the children on the agreed exchange date, only to discover the family home abandoned and stripped of all furnishings and window coverings.

3.    Unbeknownst to Plaintiff, agents of the Philadelphia Department of Human Services ("DHS") had, prior to the mother's incarceration, coerced Ms. Friend—under threat of permanent loss of her children—into signing a contrived "safety plan" authorizing DHS to remove the children and place them with an unknown third party.

4.    For several weeks thereafter, Plaintiff had no information regarding his sons' whereabouts, condition, or welfare, causing him extreme emotional distress.

5.    Thereafter, Plaintiff received a summons to appear before Philadelphia Family Court. On his first court date, the presiding judge abruptly cancelled the hearing without explanation and set a new date.

6.    At the rescheduled hearing, DHS—through indeterminate fabrications alleging parental unfitness and deliberately injurious misrepresentations of facts—sought to justify continued state custody of the children. Plaintiff was never provided with notice of any facts purportedly supporting those allegations, nor given an opportunity to review or contest them.

7.    Throughout all proceedings, Plaintiff's court-appointed counsel failed to challenge DHS's unsupported claims, to cross-examine adverse witnesses, or to call exculpatory witnesses, depriving Plaintiff of effective assistance of counsel.

8.    The presiding judge repeatedly admitted DHS's allegations over objection, without requiring DHS to present any probative evidence or producing any corroborating testimony.

9.    Over the course of a full multidisciplinary investigative review, DHS uncovered no evidence—abusive, neglectful, or otherwise—that Plaintiff was unfit to parent.

10.    Despite this exculpatory finding, DHS never disclosed the unsubstantiated disposition to Plaintiff, (i.e. nullifying any legal basis for the children to remain in state custody) nor altered its custody orders—effectively concealing material information and tolling the statute of limitations on any challenge.

11.     Instead, DHS falsely represented in subsequent hearings that "father refuses to follow family plan" and secured a court-sanctioned "stipulation" barring Plaintiff from removing his children from state placement.

12     This pretextual "family plan" was concocted directly after the fact and ratified by the court, leaving Plaintiff with no legal recourse to reunify with his sons.

13.     For eight years—from 1997 until 2005—DHS and the Family Court permitted the children to remain in state custody, notwithstanding the absence of any justification or judicial finding of parental unfitness.

14.     During that period, DHS made no meaningful efforts to reunify Plaintiff with his children, failed to provide reunification services, and obstructed communication concerning case status and visitation.

15.     Subsequentially, and force majeure, while seeking employment, Plaintiff was issued his Pennsylvania Child Abuse History Certification in the month of September of 2024—attached hereto as prima facie evidence **Exhibit A, (Certification ID: 0L78NQ9BXZ)**, which confirms that Plaintiff has never been identified as a perpetrator of child abuse. This serendipitous and unforeseen development irrefutably exonerates Plaintiff and directly contradicts the DHS false and defamatory allegations of parental unfitness—demonstrating the seizure(s) and prolonged separation of Plaintiff from his children were conducted under false pretenses, constituting a grave violation of due process and fundamental parental rights.

16.     Plaintiff's clean child-abuse certification serves to both present an incontrovertible exhibit of prima facie exculpatory evidence and illuminate and expose Defendants unfathomable systemwide conspiracy of violating Plaintiff's parental rights.

17.     The systemic failures of the DHS and the Commonwealth of Pennsylvania's child welfare system allowed this conscious-shocking subversion of the rule of law to occur with impunity.

18.     The Defendants through their deliberate malfeasance, engaged in perjury, fraud and concealment, and falsification of records, to obstruct justice, prolong Plaintiffs separation from his children, and prevent accountability for their illegal actions. By these actions, the DHS and Pennsylvania Department of Human Services systematically violated Plaintiff's Fourth and Fourteenth Amendment rights under color of state law, causing irreparable harm, emotional trauma, loss of consortium, and other compensable injuries.

## TABLE OF AUTHORITIES

### CASES

1. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)
2. *Brady v. Maryland, 373 U.S. 83 (1963)*
3. *Lopez v. Dep't of Health Servs., 939 F.2d 881 (9th Cir. 1991))*
4. *Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101 (9th Cir. 2010)*
5. *Troxel v. Granville, 530 U.S. 57 (2000))*
6. *Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000))*
7. *Beltran v. Santa Clara County, 514 F.3d 906 (9th Cir. 2008)*
8. *Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999)*
9. *Kids for Cash Scandal (analogous pattern of judicial collusion with agencies)*
10. *Adoption And Safe Families Act*

### VI. CLAIMS FOR RELIEF:

### COUNT I – VIOLATION OF THE FOURTH AMENDMENT: UNLAWFUL SEIZURE

### COUNT II – VIOLATION OF THE FOURTEENTH AMENDMENT: DUE PROCESS & EQUAL PROTECTION

### COUNT III – MALICIOUS PROSECUTION & OFFICIAL MISCONDUCT

### COUNT IV – DEFAMATION PER SE: FALSE ALLEGATIONS OF PARENTAL UNFITNESS RESULTING IN REPUTATIONAL HARM

### ARGUMENT

1. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—Under **Article I, Section 11** of the Pennsylvania Constitution—"All courts shall be open; and every person for an injury done to him in his lands, goods, person or reputation shall have remedy by due course of law and justice"—the Commonwealth affirmatively guarantees both **(a)** meaningful access to adjudication and **(b)** a remedy when state actors, under color of law, inflict injury on one's person or reputation without due process. In Plaintiff's case that provision: **1. Opens the Courts**: Secures his right to invoke judicial authority against the DHS's warrantless seizure and retention of his children and the Family Court's obstruction of his hearings (**§§ 3–7, 12–15**); **2. Guarantees a Remedy**: Confirms his entitlement to have all constitutional injuries—unlawful seizure **(Count I)**, denial of due process **(Count II)**, fraud and concealment, malicious prosecution **(Count III)**, defamation per se **(Count IV)**—redressed "by due course of law and justice" rather than left unreviewed; **3. Imposes a Duty of Fair Procedure**: Requires that DHS and the judiciary adhere to established notice, hearing, and evidentiary rules before disrupting the parent–child relationship, thereby underpinning his claims for declaratory and injunctive relief; and: **4. Supports Damages**: Affirms his right to recover compensatory and punitive damages for the emotional distress, loss of consortium, reputational harm, and other injuries resulting from

constitutional violations, consistent with § 1983 and Monell. In sum, **Article I, Section 11** directly sustains Plaintiff's complaint by constitutionalizing both his right to open courts and his entitlement to legal redress for the State's flagrant breaches of due process, Fourth Amendment protections, and parental–child liberty interests.

2. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—The **Fourteenth Amendment** of the United States Constitution, particularly its **Due Process Clause**, provides the fundamental protection against the deprivation of life, liberty, or property by state actors without due process of law. This Amendment is directly applicable to Plaintiff's case in the following ways: 1. **Due Process Violations**: The Fourteenth Amendment guarantees procedural and substantive due process. Plaintiff's case centers on the unlawful removal of his children from his custody without proper legal justification, a violation of his fundamental parental rights. The government's failure to provide him with timely notice, hearings, or an opportunity to contest the allegations of parental unfitness (specifically fabricated by DHS), obstructs his ability to reunite with his children, violating the procedural due process protections under the Fourteenth Amendment. **2. Right to Family Integrity**: The Supreme Court has recognized that parents have a fundamental constitutional right to the care, custody, and control of their children (e.g., *Troxel v. Granville*). DHS's actions, including the wrongful removal of Plaintiff's children and prolonged separation without legal cause, infringe upon this protected right. The failure to reunify Plaintiff with his children and the continued separation despite no evidence of parental unfitness also constitutes a violation of his substantive due process rights under the Fourteenth Amendment. **3. Failure to Provide a Meaningful Hearing**: Plaintiff was not given an opportunity to challenge the government's allegations or the unlawful actions taken by DHS. Under the Fourteenth Amendment, Plaintiff was entitled to a fair, adversarial and timely hearing where he could contest the seizure of his children. The government's failure to provide this hearing directly deprives Plaintiff of his rights to due process and undermines the integrity of the judicial process. *Wallis* held that a parent is entitled to some pre-deprivation process (absent truly exigent circumstances), which were not present in this case. 4. **Fraudulent Misrepresentation and Concealment**: The Fourteenth Amendment protects individuals from state actions that are arbitrary or based on false claims. DHS fabricated allegations of parental unfitness and failed to disclose exculpatory evidence (**18 U.S.C. § 1001(a)(1)–(2)**), (i.e., the unsubstantiated findings of the child protective investigation). These actions further deprived Plaintiff of his ability to challenge the state's misconduct and reunite with his children, which constitutes a violation of his due process rights under the Fourteenth Amendment. In conclusion, the **Fourteenth Amendment's Due Process Clause** is pivotal in supporting Plaintiff's claim. It not only guarantees procedural fairness in governmental actions but also protects the substantive right of parents to maintain the care, custody, and control of their children. *Calabretta* explicitly rejected the idea that social workers have **greater authority than law enforcement** when investigating child welfare cases. The court ruled that **constitutional protections apply equally, and child removals must meet strict legal standards**. The government's unlawful actions in this case violate these core protections. In *Brady*, the Supreme Court ruled that **the suppression of material exculpatory evidence violates due process** because it deprives the accused of a fair trial.

3. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial

authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**The Fourth Amendment** of the United States Constitution protects individuals against unreasonable searches and seizures, providing essential safeguards against arbitrary government action. In the context of this case, the Fourth Amendment is highly relevant and applicable, as detailed below: 1. **Unlawful Seizure of Children**: The Fourth Amendment requires that no person be subjected to unreasonable seizures. Plaintiff's children were taken from him by the Department of Human Services (DHS) under circumstances that lacked probable cause, exigent circumstances, or valid court order. DHS coerced the children's mother into signing a "safety plan," which led to the children's unlawful removal without judicial oversight or proper procedural safeguards, directly violating the Fourth Amendment's protections against unreasonable seizure. 2. **Absence of Probable Cause or Warrant**: Under the Fourth Amendment, law enforcement and government agencies must demonstrate probable cause to seize property or persons. Here, DHS's actions—removing Plaintiff's children based on fabricated allegations of parental unfitness—occurred without a warrant(s), judicial approval, or sufficient evidence. The Fourth Amendment was violated because DHS's seizure was neither supported by warrant or probable cause, and because the "emergency" was fabricated. This constitutes an unreasonable seizure, as the children were taken based on coercive tactics and unsupported claims, without the procedural safeguards required by the Fourth Amendment. 3. **Failure to Provide Proper Judicial Oversight**: The Fourth Amendment also requires that any seizure of a person be subject to judicial review. Plaintiff was never afforded a timely or meaningful opportunity to challenge the seizure of his children in a court of law. The rescheduled Family Court hearings were fraught with procedural irregularities, including delays, fraudulent allegations, and the failure to present supporting evidence, effectively denying Plaintiff a meaningful hearing on the legality of the seizure. The lack of timely judicial oversight in these proceedings compounded the **Fourth Amendment** violations. 4. **Pattern of Unlawful Removals**: The broader systemic issue in this case involves DHS's pattern of unlawful child removals without proper legal justifications, which is further underscored by the analogous *Kids for Cash Scandal,* in which two Pennsylvania judges, Mark Ciavarella and Michael Conahan, were found guilty of accepting financial incentives from private detention centers in exchange for imposing excessive and unjustified sentences on juveniles. This scheme resulted in wrongful detentions and significant due process violations. The scandal highlighted systemic corruption, government failure to intervene, and the devastating consequences of institutional abuse. This pattern demonstrates the DHS's persistent disregard for the Fourth Amendment's protections and its failure to adhere to constitutional requirements for lawful seizures. 5. **Deprivation of Liberty and Custody Rights**: The Fourth Amendment protects against the unlawful deprivation of liberty. In this case, the prolonged separation of Plaintiff from his children, without just cause, constitutes a violation of his rights under the Fourth Amendment. The failure to reunite the family after Plaintiff's exoneration following extensive child protective investigation and testing reflects a continuing deprivation of liberty, reinforcing the Fourth Amendment claim. In summary, the **Fourth Amendment** is central to Plaintiff's case because it directly addresses the unlawful and unreasonable seizure of his children by DHS. The absence of proper judicial oversight, lack of probable cause, and failure to follow the constitutional procedures for child removals substantiate the Fourth Amendment violations. *Beltran* emphasized that **misrepresentation of facts to justify a removal is a violation of due process** and can hold child welfare officials liable. These actions deprived Plaintiff of his liberty and parental rights, strengthening his claims for redress and remedy under constitutional law. *Wallis* held that removing children without justification causes irreparable emotional harm to both parents and children.

4. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**ASFA's provisions constitute binding federal law under the Supremacy Clause**. Where a State child-welfare agency (or its contracted agents) fails to comply with ASFA's minimum notice, hearing, or "reasonable-efforts" requirements, such noncompliance may be relied upon by a plaintiff to establish that the State has violated federally mandated procedural safeguards—**Application:** Those violations, in turn, may support a § 1983 claim for deprivation of liberty without due process of law. Under the Adoption and Safe Families Act of 1997 ("ASFA"), 42 U.S.C. §§ 675 et seq., Congress conditioned receipt of Title IV–E foster-care funding on States' compliance with a number of procedural and substantive mandates, specifically: **1. "Reasonable efforts" requirements** (42 U.S.C. § 671(a)(15)(C)) – **States must make reasonable efforts to reunify the child and family, or document why such efforts were not required. 2. Time-to-termination deadlines** – If a child has been in foster care for 15 of the most recent 22 months, the State must file a petition to terminate parental rights, subject to narrow exceptions (42 U.S.C. § 675(5)(E)). Defendants' systematic failure to adhere to their legal obligations under ASFA's provisions resulted in the unlawful and prolonged separation of Plaintiff's minor sons. **Child-welfare agencies are charged with facilitating family reunification, preventing unnecessary removals, and ensuring that children do not linger in care without timely judicial oversight—Application:** Yet here, Defendants **deliberate disregard** for these duties **directly contributed** to the **continued separation** of Plaintiff's s children. Defendants, perpetrating to act in the best interests of the child, **repeatedly ignored required procedural safeguards in dependency proceedings,** causing undue delays and **unjustified custody determinations** that suppressed Plaintiff's parental rights. By **failing to initiate timely permanency planning and overlooking essential review mechanisms,** Defendants extended the children's foster-care placement **without just cause.** Further, Defendants neglected their responsibility to make active, ongoing efforts to reunify Plaintiff with his children—providing neither appropriate services nor **transparency in case management.** Instead, Defendants, perpetrating to act in the best interest of the child—**obstructed reunification** through **manipulation of the legal process: procedural stalling, reliance on unfounded allegations,** and a lack of meaningful communication. These actions amount to a **willful disregard** for the **core purpose of preserving family unity.** Over the course of eight years, **Defendants allowed the children to languish in the system without making reasonable reunification efforts or seeking alternatives to foster care placement—Application:** Defendants non-compliance with ASFA's requirements **evidence** that the removal and continued detention of the children was **"arbitrary"** and **"capricious",** or otherwise violative of the Fourteenth Amendment's due-process protections. In *Lopez,* **the failure to make reasonable efforts to reunify the family, despite no substantiated claims against the parent, was a key factor in holding the agency liable.** *Troxel* held that there is a presumption that fit parents act in the best interest of their children, and the state cannot override parental rights without clear and convincing evidence that the parent is unfit. In *Troxel,* the Supreme Court ruled that government interference with parental rights requires **a compelling state interest,** such as evidence of unfitness, neglect, or harm to the child. The mere belief that the state knows better is **not sufficient.**

5. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial

authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. § 241 (Conspiracy against rights) Element: Conspiracy — Two or more persons agreeing to violate constitutional rights—Application:** DHS agents, court-appointed counsel and the presiding judge coordinated to effectuate the children's removal and continued detention despite lacking any lawful basis. Their joint misconduct satisfies the "agreement" element—**Element: Intent to injure, oppress, threaten or intimidate in the free exercise of rights. Application:** The deliberate fabrication of unfitness allegations, suppression of exculpatory findings, and orchestration of successive hearings were undertaken to frustrate Plaintiff's fundamental right to familial association and due process—**Element: Deprivation of rights secured by the Constitution—Application:** The conspirators' scheme deprived Plaintiff of his Fourteenth-Amendment liberty interest in the care, custody and management of his children. **No exigency or court order justified the seizures and prolonged custody—Result: § 241** supports a criminal count or evidence of a pattern of willful conspiratorial conduct to deprive constitutionally protected parental rights.

6. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. § 242 (Deprivation of rights under color of law) Element: Action "under color of" state law—Application:** DHS social workers and the Family Court judge acted "under color of law" when executing and enforcing the "safety plan" and subsequent custody orders—**Element: Willful deprivation of a right protected by the Constitution or federal law—Application:** By coercing the mother into an unlawful plan, **(Facts, 3,4)** withholding notice of unsubstantiated findings, (i.e. nullifying any legal basis for the children to remain in state custody) and abrogating judicial oversight, the State willfully deprived Plaintiff of his Fourth- and Fourteenth-Amendment rights to due process and freedom from unreasonable seizure—**Element: Causation of injury, harm or loss—Application:** The illegal removal and eight-year detention inflicted severe emotional distress, trauma and permanent disruption of the parent-child relationship—**Result: § 242 criminalizes each official's deliberate deprivation of Plaintiff's rights**—providing a direct basis to allege that DHS, their agents and employees, including judicial authorities, and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, are individually liable for the unlawful seizure and continued detention of his children. **§ 241** targets the collective conspiracy by DHS, Pennsylvania Department of Human Services, counsel, and the judiciary to strip Plaintiff's parental rights through fabricated allegations and procedural manipulation. Together, these statutes reinforce the complaint by **(a)** establishing federal criminal liability for conspiratorial wrongdoing **(§ 241)** and **(b)** underscoring individual accountability for willful rights deprivations **(§ 242)**.

7. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. § 1001(a)(1)–(2 Statutory Text: 18 U.S.C. § 1001(a)(1)–(2)** provides that—in "any matter within the jurisdiction of the ... judicial branch of the Government of the United States"—whoever

"knowingly and willfully **(1)** falsifies, conceals, or covers up … a material fact; [or] **(2)** makes any materially false, fictitious, or fraudulent statement or representation" is subject to criminal liability **Matter Within Federal Jurisdiction:** The Philadelphia Family Court proceedings—which involve federal due-process and Fourth Amendment rights—constitute a "matter" before the judicial branch of the United States. **Knowing Falsification and Concealment:** As detailed in Plaintiffs Statement of Facts, DHS agents coerced and misled the children's mother into an illicit "safety plan," then deliberately suppressed exculpatory investigative findings **(no unfitness)** and fabricated allegations of parental unfitness in documents and court filings **Application to Plaintiff's Case:** These acts—**(a)** concealing a material fact (the unsubstantiated findings), and (b) submitting false statements to the court—fall squarely within **§ 1001's** prohibitions. Recognizing these violations strengthens the complaint by underscoring that Defendants not only deprived Plaintiffs of constitutional rights but also **committed independently punishable federal offenses.**

8. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. § 1623** ("False declarations before grand jury or court") **criminalizes** the very conduct alleged in the Plaintiff's Statement of Facts—namely, the knowing presentation of fabricated, material allegations under oath in judicial dependency proceedings—and thus both buttresses his malicious-prosecution theory and underscores the deliberate, wrongful nature of the DHS's actions: **Prohibition of Knowingly False, Under-Oath Declarations:** Section **1623(a)** provides that "Whoever under oath … in any proceeding before or ancillary to any court … knowingly makes any false material declaration … shall be fined … or imprisoned …" Here, DHS agents and their surrogate witnesses fabricated allegations of Plaintiff's "unfitness" and presented those false claims to the Family Court, knowing them to be untrue. 1. **Establishing Malice and Lack of Probable Cause:** A § 1623 violation requires proof of **(a)** a false material statement, **(b)** knowingly made, **(c)** under oath in court. **Each prong is met:** the DHS's allegations were **(i)** material **(they formed the sole basis for removal), (ii)** known by the agents to be baseless (no investigation ever substantiated abuse or neglect), and **(iii)** offered under oath at the rescheduled hearing. This intentional falsification satisfies the "malice" and "lack of probable cause" elements of malicious prosecution under **§ 1983. 2. Tolling and Official Misconduct:** Because § 1623 is punishable by up to five years' imprisonment, its violation amounts to **willful, criminal subversion of the judicial process.** The DHS's continued reliance on these perjured declarations—which the court "ratified" by accepting them without scrutiny—constitutes official misconduct and **justifies tolling any statute of limitations** on Plaintiff's claims, as well as **affirming the unavailability of qualified immunity.** By incorporating § 1623 into his complaint, Plaintiff underscores that the State's agents did not merely err in judgment—they actively perjured themselves under oath, thereby compounding their constitutional violations with statutory crimes and reinforcing the necessity of full redress. The *Brady* ruling condemns not only the suppression of evidence but also the **use of misleading or false evidence** in court.

9. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. §**

**1510: Obstruction of Examination in Official Proceeding Statutory Text (simplified):** "Whoever corruptly… alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair its integrity or availability for use in an official proceeding… shall be fined or imprisoned—"**Element – "Concealment… of a document… with intent to impair its availability"**—**Application:** DHS deliberately withheld its exculpatory investigative findings, never providing Plaintiff the notice of unsubstantiated allegations as required by law. By concealing the report that cleared him of abuse, or neglect, DHS impaired the availability of critical evidence in his dependency hearings—an "official proceeding" determining custody—**Element – "Corruptly"**—**Application:** The suppression was not merely negligent: DHS fabricated new "pretexts" to prevent reunification. Such willful concealment, intended to mislead both Plaintiff and the Family Court, satisfies the "corrupt" mens rea required by § **1510**—**Result:** § 1510 supports a criminal inference that DHS obstructed Plaintiff's access to and use of official records vital to asserting his parental rights.

10. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. § 1512: Tampering with Witness, Victim, or Informant Statutory Text (key provisions): § 1512(b)(1):** "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person… with intent to… hinder, delay, or prevent the communication to a law enforcement officer or judge of… information… shall be punished."**§ 1512(c)(1):** "Whoever corruptly … otherwise obstructs, influences, or impedes any official proceeding…"**Element – "Corrupt persuasion" or "intimidation"**—**Application:** DHS agents coerced Ms. Friend under threat of permanent loss of her children into a sham "safety plan". That coercion—explicitly designed to prevent her truthful account and to bar Plaintiff from lawful custody—amounts to corrupt persuasion and intimidation of a participant in the custody proceedings—**Element – "Hinder… communication… of information… to a judge"** —**Application:** By forcing the mother's false admission and suppressing exculpatory evidence, DHS impeded Ms. Friend from communicating the true custodial arrangement to the Family Court. This directly obstructed the Court's fact-finding function in Plaintiff's hearings—**Element – "Obstructs… any official proceeding"**—**Application:** The combined effect of coercion, fabricated allegations, failure to disclose records, and manipulation of scheduling obstructed Plaintiff's dependency and reunification proceedings—clearly "official proceedings" under **§ 1512(c)(1)**—**Result:** § 1512 bolsters the complaint by demonstrating that DHS's tactics were not merely erroneous but rose to the level of witness-tampering and obstructing the Family Court's adjudicatory process—**Synthesis:§ 1510** captures DHS's concealment of vital investigative records, depriving Plaintiff—and the Court—of truth. **§ 1512 reaches the coercive and obstructive methods DHS used against both the children's mother and the judicial process itself.** Together, these provisions underscore the willful, criminal-law dimensions of DHS's misconduct and reinforce the complaint's allegations that state actors under color of law systematically deprived Plaintiff of his constitutional right to family integrity and due process.

11. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**(Aiding and**

Abetting) Under **18 U.S.C. § 2(a)**, "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." In the context of Plaintiff's civil–constitutional claims, § 2 reinforces the unlawful nature of the actors' coordinated misconduct and substantiates his causes of action for conspiracy, malicious prosecution, and deprivation of rights under color of law: **Primary Offenses Alleged**–Fraudulent seizure and detention of children (Fourth Amendment violation)–Perjured courtroom testimony **(18 U.S.C. § 1623 perjury)**–Concealment and suppression of exculpatory evidence **(18 U.S.C. § 1001 false-statement offense) Aiding and Abetting Liability–DHS caseworkers** who coerced the mother into signing an unlawful safety plan "aided" the seizure–**Supervisors and multidisciplinary teams** who failed to report or correct the false allegations "abetted" its continuance–**Presiding judge Nicholas N. D'Allessandro** and the **appointed attorney**, "John Doe", by accepting fabricated evidence and denying fair hearings, "counseled" and "procured" the ongoing deprivation. **Elemental Fit. Intent to Facilitate**: All participants knowingly participated in each other's misconduct (e.g., fabricated allegations presented, concealment of exculpatory results). **Overt Acts in Furtherance**: Each hearing, affidavit, and court order served as an overt act advancing the unlawful retention of Plaintiff's children. **Causation**: The combined actions of these state actors directly caused the eight-year separation without lawful basis. **Support for Civil Claims. Conspiracy (§ 1983 & common law)**: § 2's recognition that **secondary actors are as culpable as principals** buttresses the argument that DHS agents, Pennsylvania Department of Human Services officials, judicial actors, and counsel **formed a coordinated scheme to violate constitutional rights. Malicious Prosecution**: Aiding and abetting perjured testimony and withheld evidence satisfies the "malice" and "lack of probable cause" elements. *Monell Liability*: Municipal liability under **42 U.S.C. § 1983** extends to policies or customs that encourage or tolerate such aiding and abetting. **Conclusion**: By applying **18 U.S.C. § 2**, Plaintiff demonstrates that **every state-actor who knowingly participated in, facilitated, or failed to stop the unlawful seizure and prolonged detention of his minor sons is legally responsible as a principal**. This deepens and amplifies his civil remedies under § 1983 (and related state-law claims) by showing **not only direct misconduct but a collective, sanctioned effort to deprive him of his constitutional parental rights.**

12. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**18 U.S.C. §3** defines an **accessory after the fact** as someone who, knowing a federal crime has been committed, assists the offender to avoid apprehension or punishment. In this context, those who conceal facts, suppress evidence, or **assist in prolonging illegal actions—like unlawful detention**—are liable. This applies directly to Plaintiffs' case, as those involved in obstructing justice or aiding in the continued wrongful deprivation would qualify as accessories after the fact under §3, reinforcing Plaintiffs claims for civil relief and accountability.

13. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—Under **18 U.S.C. § 1513** ("Retaliating against a witness, victim, or an informant"), it is a federal crime for

any person to "knowingly, with the intent to retaliate, take any action harmful to any person ... for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense" or "for the attendance of a witness ... at an official proceeding" In Plaintiff's case, § 1513 applies and bolsters his complaint in four respects: 1. **Retaliation for Attempted Cooperation.** DHS agents coerced Ms. Friend under threat of losing her children—thereby punishing her for any cooperation or intended cooperation with lawful custody procedures—and then fabricated allegations to forestall Plaintiff's own participation in court. This is classic "retaliation ... for providing ... information" or for "attendance ... at an official proceeding" under § 1513(a)–(b)(2). **2. Harmful Acts to Prevent Testimony.** By secretly seizing the children, suppressing exculpatory findings, and forcing an "ex post facto" family plan, the DHS inflicted severe emotional and reputational harm on Plaintiff to deter him from testifying or asserting his rights—precisely the "action harmful to any person ... with intent to retaliate" that § 1513(e) punishes. **3. Corroborating Malicious-Prosecution and § 1983 Claims.** Demonstrating that DHS agents committed a federal retaliatory crime underscores their malicious intent and lack of probable cause, negating any qualified-immunity defense and affirming Plaintiff's § 1983 claim for deprivation of due process and malicious prosecution. 4. **Tolling and Enhanced Remedies:** A § 1513 violation **tolls limitations** periods and carries up to ten years' imprisonment—confirming both the timeliness of Plaintiff's suit and the gravity of the misconduct, thereby strengthening his prayer for declaratory relief, compensatory and punitive damages, and injunctive measures to prevent further retaliation. In sum, **18 U.S.C. § 1513** squarely criminalizes the DHS's pattern of coercion, intimidation, and reprisals against both Ms. Friend and Mr. Shaw, reinforcing the Plaintiff's civil constitutional claims and underscoring the necessity of full redress.

14. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—Under **18 U.S.C. § 1519**, it is a crime to "knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States– **Falsification of "Safety Plan" and Court Records.** DHS agents coerced Ms. Friend into signing a fabricated "safety plan," then submitted it to the Family Court as though it were a lawful instrument of custody. By creating and using that false document to obstruct Plaintiff's lawful claim to custody, DHS violated **§ 1519's** proscription against making a false entry "with intent to . . . impede or obstruct" a judicial proceeding–**Concealment of Exculpatory Findings.** The deliberate suppression of the unsubstantiated child-abuse investigation reports **(Facts 10–12)** likewise constitutes "concealment" of material records to impede Plaintiff's ability to present exculpatory evidence. That concealment was undertaken "knowingly" and "with intent to . . . influence" the Family Court's decision, exactly the conduct § 1519 was enacted to punish. By establishing that DHS agents knowingly falsified and concealed documents to obstruct a court proceeding, **18 U.S.C. § 1519** underscores and sustains the Plaintiff's claims of official misconduct, fraudulent concealment, and deprivation of constitutional rights under color of state law.

15. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and

employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—Under the **Sixth Amendment,** "in all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defense," which the Supreme Court has extended to any state-deprived liberty interest sufficiently akin to a criminal punishment (e.g., dependency proceedings where parental liberty is at stake). Here: **1. Right to Effective Assistance of Counsel**—Plaintiff's court-appointed attorney failed to challenge the DHS's fabricated allegations, refused to advocate for reunification, and allowed inadmissible evidence to go uncontested. This breaches the Sixth Amendment guarantee of effective counsel "so as to ensure a fair trial" and, by parity, a fair adjudication in a dependency-style proceeding that threatened his fundamental liberty interest in family unity. **2. Confrontation and Compulsory Process**—By permitting DHS to introduce unsubstantiated claims without cross-examination or subpoenaing exculpatory witnesses (e.g., the unsubstantiated reviewers who found no abuse, or neglect), the court denied Plaintiff the **Sixth Amendment** rights to confront adverse witnesses and to compulsory process to secure witnesses in his favor. **3. Fundamental Fairness in "Quasi-Criminal" Proceedings**—Dependency hearings that result in the removal and long-term separation of children impose punitive, "criminal-like" constraints on parental liberty. **The Sixth Amendment's** procedural safeguards—counsel, confrontation, and compulsory process—are therefore constitutionally required and were systematically denied. **4. Prejudice and Causal Connection**: The deprivation of effective representation directly caused Plaintiff's inability to rebut DHS's false charges, leading to an eight-year wrongful separation. This prejudice satisfies the Sixth Amendment's standard that counsel's failure must undermine confidence in the outcome. Because the Sixth Amendment mandates effective assistance, confrontation, and access to compulsory process whenever a State's actions deprive an individual of a significant liberty interest, its protections bolster Plaintiff's constitutional claim that his counsel's failures and the court's sanctioning of those failures violated his right to a fair adjudication.

16. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings.

    i.    *Brady* requires disclosure of evidence that could **change the outcome of a legal proceeding. Fraudulent concealment involves intentional acts to prevent Plaintiff from discovering the true nature of misconduct, effectively tolling any applicable statutes of limitations.** In this case, fraudulent concealment is relevant due to the alleged falsification of records, suppression of exculpatory evidence, and non-disclosure of custodial transfers.

    ii.    The doctrine of fraudulent concealment can toll (i.e., suspend) the running of a statute of limitations in federal cases. This means that if a Defendant has actively concealed wrongdoing, the limitations period does not begin to run until the Plaintiff discovers, or with due diligence should have discovered, the basis for the claim. **This principle is particularly relevant in cases involving complex frauds or conspiracies where the wrongdoing is not immediately apparent.**

    iii.    In *Lopez*, the court ruled that the removal of a child from a parent's custody without due process, including proper notice and a fair hearing, violated constitutional rights. *Costanich* affirmed that seizing children without a valid basis, probable cause, or exigent circumstances is an unconstitutional **violation of the Fourth Amendment.**

iv. The *Calabara* court ruled that **government agencies must provide clear legal justifications for their actions**, and that **fear of potential abuse is not sufficient to justify warrantless seizures. The court emphasized that child protective services must comply with the Fourth Amendment**, just like law enforcement.

v. The *Beltran* court reinforced the **fundamental right of parents to be notified and heard before their children are removed**, except in emergency situations where due process must still follow quickly. *Wallis* emphasized that due process requires: Notice to parents before removal (absent emergency conditions). The **due process clause of the Fourteenth Amendment** requires that no state shall **deprive any person of life, liberty, or property without due process of law**—a protection Defendants flagrantly violated.

vi. In *Costanich*, officials failed to properly notify the plaintiff of the specific allegations against her, violating **Fourteenth Amendment procedural due process**.

## INSTITUTIONAL RESPONSIBILITY & SYSTEMIC FAILURES

17. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings.

18. Defendants engaged in multiple systemic failures that **foster misconduct and violate constitutional protections**, including: **1. <u>Failure to Properly Train and Supervise Employees</u>**: Defendants failed to **adequately train, supervise, monitor, or discipline its employees**, thereby fostering misconduct and systemic violations of parental rights. **2. <u>Lack of Justification and Reporting Mechanisms</u>**: Defendants failed to require their agents to **properly justify or report incidents involving child removals**, contributing to a **lack of accountability and oversight within the agency**. *Lopez* highlighted systemic failures within the Department of Health Services, indicating that the agency engaged in practices that routinely violated parental rights. *Beltran* held that child welfare officials are not entitled to qualified immunity if they **violate clearly established constitutional rights**, particularly when they remove children without proper legal justification. **3. <u>Hostile Citizen Complaint Process</u>**: Defendants operate a **complaint system that treats complainants as adversaries** rather than addressing legitimate grievances. This **adversarial approach, supported and facilitated by local and state judicial complicity, fosters systemic retaliation, discourages accountability, and perpetuates misconduct within the agency**. *Calabretta* reaffirmed that **parents have a fundamental right to contest government interference with their parental authority** and that government actions must follow **due process protections.**

19. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and

employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—Under the law of **defamation per se,** certain false statements are so inherently harmful that damages are presumed—no proof of actual pecuniary loss is required. In Pennsylvania (and most jurisdictions), accusations that a person is unfit for their profession or "lacks integrity," or that they have committed moral turpitude, are actionable per se. Here, the DHS and Family Court publicly and **falsely branded Plaintiff a "dangerous" or "unfit" parent—fabricating allegations of neglect, abandonment, and refusal to "follow the family plan"**—during court-supervised dependency proceedings. Those statements were: 1. **Published to third parties (the court, attorneys, caseworkers, and foster-care providers). 2. False—as repeatedly confirmed by multidisciplinary reviews and Plaintiff's clean child-abuse certification. 3. Defamatory per se**—because they impute a lack of fitness, honesty, and moral character. By satisfying every element of defamation per se, these wrongful allegations entitle Plaintiff to presumed damages for reputational harm, emotional distress, and the attendant legal fees in vindicating his name. This claim thus stands on the same solid footing as his constitutional torts, reinforcing his demand for compensatory and punitive relief.

20. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—**Under 34 U.S.C. § 12601,** Congress directed the Department of Justice to investigate and—where warranted—to seek relief against any "pattern or practice … by any law enforcement agency or by any agent thereof, of conduct in violation of the Constitution or laws of the United States." By its terms, **§ 12601** applies not only to police but to any public-agency actors who, under color of law, systematically deprive citizens of federally guaranteed rights. Plaintiff's allegations fit squarely within **§ 12601's** ambit in at least three respects: **1. Systemic Removal Without Due Process,** The DHS's coercion of Ms. Friend into a secret "safety plan," the repeated failure to notify Plaintiff of exculpatory findings, and the eight-year refusal to reunify the family collectively demonstrate an **agency-wide custom or practice** of warrantless seizure and prolonged detention of children without constitutionally required notice or hearing. Each element (duress, non-disclosure, delay in permanency proceedings) recurs across multiple hearings, teams, and judicial interactions, evidencing more than an isolated error—**a systemic modus operandi that § 12601 was enacted to redress. 2. Pattern of Concealment and Fabrication,** The DHS's fabrication of allegations ("father refuses to follow family plan"), its suppression of unsubstantiated investigative results, and its reliance on manufactured findings to thwart reunification illustrate a deliberate pattern of fraudulent concealment and misrepresentation. **Under § 12601,** such "conduct in violation of the Constitution" (here, Fourteenth-Amendment due process) becomes **the proper subject of DOJ inquiry and federal injunctive relief,** because it is repeated, purposeful, and undertaken under color of law.**3. Judicial Complicity and Agency Custom, by condoning inadmissible DHS allegations without oversight, the presiding judge contributed to and ratified the same unlawful agency practice.** Monell liability principles imported into § 12601 enforcement require showing that an official policy or a persistent custom caused the constitutional deprivations. **The interlocking misconduct of DHS agents, multidisciplinary teams, court officers, and appointed counsel—over multiple years and across multiple forum settings—manifests a de facto policy of subordinating parental rights to bureaucratic expediency, precisely the "pattern or practice" § 12601 prohibits. Conclusion:** By alleging that DHS systematically **(1)** removed and retained children without

probable cause or hearing, **(2)** concealed exculpatory evidence to sustain spurious claims, and **(3)** secured judicial imprimatur through repeated oversight failures, Plaintiffs invokes **34 U.S.C. § 12601's** grant of federal investigatory and remedial authority. These allegations establish that the DHS's conduct was neither accidental nor isolated but part of a consistent pattern of rights violations warranting DOJ intervention and injunctive relief under **§ 12601**.

21. Plaintiff incorporates by reference paragraphs 1 through 18 of the Statement of Facts as if fully set forth herein, and all times relevant hereto, DHS, their agents and employees, including judicial authorities and counsel, Pennsylvania Department of Human Services, their agents and employees, including judicial authorities and counsel, acting under color of state law to exercise judicial and administrative authority over dependency and custody proceedings—Under **28 U.S.C. § 517**, the Attorney General—or the Solicitor General or any Department of Justice officer designated by them—may "attend upon and be heard by any court" in any civil or criminal case in which the United States has an interest, and may detail DOJ attorneys to represent federal officers or agencies. In the context of Plaintiff's complaint, § 517 operates to strengthen his claim in three principal ways: **1. Federal Statement of Interest:** Plaintiff specifically invokes § 517(1) to request that the Department of Justice file a Statement of Interest, underscoring the United States' stake in vindicating constitutional guarantees against unlawful governmental removal and detention of children. By authorizing the Solicitor General to appear "upon any subject" (including due-process and equal-protection violations under color of state law), § 517 empowers the DOJ to frame the broader federal implications of DHS's pattern of rights deprivations and to urge corrective relief. **2. Representation of DHS Officials:** Under § 517(2), DOJ may detail its own attorneys to represent DHS agents, Family Court officers, and court-appointed counsel in litigation. This ensures that the very federal actors whose conduct is challenged cannot evade accountability by local counsel's conflicts or failings. A § 517 detailing of DOJ counsel would facilitate a unified presentation of the government's position on its child-welfare authorities, due-process obligations, and the illegality of the "safety-plan" seizures. **3. Catalyzing Federal Oversight and Remedial Measures:** The authority to "be heard by any court in which the United States is interested" affords DOJ a procedural foothold to highlight systemic deficiencies—coercion, non-disclosure of exculpatory findings, and prolonged separation—that violate federal statutes and constitutional norms. Once the DOJ appears under § 517, it can press for injunctive relief, oversee implementation of due-process safeguards, and coordinate with Plaintiff's Monell and **§ 1983** theories to secure both individual redress and structural reform within DHS and the Family Court. **Conclusion:** By invoking **28 U.S.C. § 517**, Plaintiff not only signals the gravity of his constitutional claims but also creates a statutory pathway for the Department of Justice to intervene, present its own evidence and arguments, and ensure consistent enforcement of federal rights. **Section 517** thus bolsters his complaint by enabling direct federal participation at both the advocacy and oversight levels.

22. Attached hereto, Plaintiff's DOJ complaint record# **484045-RMZ**, formally requesting federal intervention and litigation support, pursuant to § 12601 and § 517—underscoring the issues raised in this matter align with the broader systemic misconduct affecting Plaintiff's family and others. **The legal principles involved have significant national implications**, and federal intervention in this case is necessary to address the deep-rooted constitutional breaches perpetrated by the Defendants.

23. Plaintiff's prima facie case is sustained by Defendants multitudinous systemic constitutional and statutory breaches, and further buttressed by multiple and voluminous streams of inculpatory evidence and testimony, including, Pennsylvania Department of Human Services files and

placement records, DHS files and case records, Family Court documents and transcripts, victims' testimony, the clean child-abuse certification, and the unsubstantiated findings of a full multidisciplinary review, all of which highlight the unlawful practices that have continued unchecked for years.

24. *Monell* established that municipalities and local government agencies can be held liable for constitutional violations when those violations result from an official policy, custom, or practice. Under *Monell*, a municipality (here, the **City of Philadelphia**) can be held liable if the plaintiff can demonstrate that the violations were a result of a municipal policy, custom, or deliberate indifference to constitutional rights.

24. This case exemplifies a **systemic failure of the child welfare and judicial system** in Philadelphia, Pennsylvania, warranting: a. **Federal investigation under § 12601 (pattern or practice violations)**; b. **Federal intervention through a § 517 statement of interest**; c. **legal redress and remedy through § 1983 for deprivation of parental rights under color of law**.

**42 U.S.C. § 1983: DEPRIVATION OF PARENTAL RIGHTS UNDER COLOR OF LAW**

1. 42 U.S.C. § 1983 provides a civil cause of action against any person who, under color of any statute, ordinance, regulation, custom, or usage of any State, subjects any citizen to the deprivation of rights secured by the Constitution and laws of the United States.

2. Plaintiff possessed a fundamental liberty interest in the care, custody, and control of his children, guaranteed by the Due Process Clause of the Fourteenth Amendment and the parent–child relationship recognized in *Troxel v. Granville*, 530 U.S. 57 (2000), and its progeny.

3. Defendants, acting under color of state law, intentionally and without lawful justification:
   a. Seized Plaintiff's children without probable cause, exigent circumstances, or a valid court order;

4. Denied Plaintiff timely notice and a meaningful hearing to challenge the removals;
   c. Fabricated and presented false allegations of parental unfitness;
   d. Withheld exculpatory findings and obstructed Plaintiff's ability to reunify with his children; and
   e. Ratified and conferred judicial imprimatur upon these unconstitutional actions.

5. These actions deprived Plaintiff of rights, privileges, and immunities secured by the Constitution, including:
   a. The right to substantive and procedural due process (U.S. Const. amend. XIV);
   b. The right to be free from unreasonable seizures (U.S. Const. amend. IV); and
   c. The right to effective assistance of counsel (U.S. Const. amend. VI).

6. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, loss of consortium with his children, and other damages in an amount to be determined at trial.

7. Defendants are not entitled to qualified immunity because the constitutional rights at issue were clearly established at the time of the unlawful conduct, and no reasonable official would have believed that seizing and indefinitely retaining Plaintiff's children without due process was lawful.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:
a. Declaring that Defendants actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments; b. Awarding compensatory and punitive damages against each Defendant in an amount to be determined at trial; c. Granting attorney's fees and costs pursuant to 42 U.S.C. § 1988; and d. Granting such other relief as the Court deems just and proper.

**V. INJURIES: Legal Analysis of Plaintiff's Alleged Injuries**

1. **Deprivation of Liberty (Unlawful Seizure, Detention, and Malicious Prosecution):** The Fourth Amendment protects against unreasonable seizures, so Plaintiff's allegations of wrongful seizure and confinement (and any continued detention without legal justification) constitute a clear deprivation of liberty. A §1983 action for false arrest/imprisonment permits recovery for the time and freedom lost by the plaintiff. Likewise, a malicious-prosecution claim (often based on the Fourth Amendment or due process) addresses the injury of an unwarranted criminal case. In either event, the injury is the wrongful restraint of liberty and the lost freedom to go about one's life. Courts

recognize that such losses are compensable as "actual losses" directly flowing from the violation. For example, in *Borunda v. Richmond* the Ninth Circuit affirmed that a successful §1983 plaintiff is entitled to compensatory damages for "all injuries suffered as a consequence" of a wrongful arrest, including time spent fighting wrongful charges. In short, detention without probable cause (4th Amendment) or continued confinement after a criminal proceeding (malicious prosecution) proximately causes the loss of liberty, which §1983 plainly authorizes the jury to compensate.

The Sixth Amendment (right to speedy trial/counsel) and the Fourteenth Amendment (due process) likewise safeguard liberty interests; a violation (e.g. denial of counsel or hearing) that prolongs incarceration or subjects the plaintiff to criminal sanctions also injures his liberty. Federal courts permit compensation for the resulting detention. Indeed, the Supreme Court has held that a victim of a constitutional deprivation "is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress" resulting from that violation. Here, malicious prosecution caused precisely those harms to Plaintiff (time in jail, restrictions on movement, fear of harm), making them recoverable under the applicable civil-rights claims.

2. **Emotional Distress and Humiliation:** The allegations (e.g. being falsely accused, arrested, prosecuted, or defamed) inherently give rise to severe emotional injuries – fear, anxiety, embarrassment, and mental anguish. Under §1983, emotional distress is a recognized category of compensable harm so long as it was caused by the constitutional violation. The Ninth Circuit has expressly held that compensatory damages may include "mental anguish and humiliation". Similarly, the Supreme Court in *Carey v. Piphus*, 435 U.S. 247, 258-64 (1978), acknowledged that victims of rights violations can recover for "pain and suffering," humiliation, and emotional distress, where the violation caused actual injury. Here, Plaintiff's emotional injuries flow directly from the alleged misconduct (the stress of an illegal search, arrest, or false charge). These injuries are linked to the Fourth Amendment (e.g. fear during an unlawful seizure), Sixth Amendment (stress of unfair trial procedures), and Fourteenth Amendment (shame and anxiety of having one's life upended without due process). Malicious prosecution and defamation claims likewise acknowledge that false accusations inflict emotional harm. As a matter of law, then, Plaintiff may recover compensation for this distress as part of his §1983 damages (subject to the general rule in *Piphus* and *Memphis v. Stachura* that actual harm must be proven – here, Plaintiff's mental anguish is asserted as actual harm resulting from the deprivation).

3. **Physical Injuries and Pain:** If the complaint alleges any bodily harm (e.g. injuries from a rough arrest or detention), those are unquestionably compensable. Use of force claims under the Fourth Amendment (or related due process claims) permit recovery of damages for physical injury and pain. Indeed, compensatory damages in §1983 include compensation for "pain and suffering" resulting from the violation. For example, if officers beat or otherwise physically mishandled Plaintiff during a seizure or in custody, the resulting bruises, aches, or medical conditions constitute actual injury. Such injuries are direct "actual losses" of health and bodily integrity. Applicable standards (e.g. *Graham v. Connor*, 490 U.S. 386 (1989)) govern whether force was excessive, but if a violation occurred, the law clearly allows recovery for any physical injuries and attendant pain that ensued. Moreover, even absent violence, injuries from confinement (stress-related conditions or self-harm) can be traced to the unlawful detention and are part of Plaintiff's compensable damages.

4. **Economic Damages (Lost Wages, Legal Fees, Fines, Property Damage):** Plaintiff also alleges monetary losses arising from Defendants' conduct. These are recoverable as actual

damages under §1983. For instance, unlawful arrest and prosecution often result in legal expenses, court costs, and lost income. Federal courts routinely allow recovery of *all* out-of-pocket losses caused by rights violations. In *Borunda*, the Ninth Circuit held that attorneys' fees and related costs expended in defending a wrongful criminal charge are "economic harm" and recoverable as compensatory damages, so long as they were a foreseeable consequence of the defendants' misconduct. Likewise, lost wages for time missed at work during false imprisonment, or lost business opportunities from a tarnished record, constitute economic injury directly traceable to the unlawful acts. If Defendants damaged Plaintiff's property (during a search or impoundment), the cost to repair or replace it is an actual financial loss. Even fines or fees imposed as a result of the illegal conduct can be recovered. In short, under traditional tort and §1983 principles, Plaintiff may recover for reasonable costs and losses ("attorneys' fees, medical bills, lost earnings, etc.") resulting from the deprivation of his.

5. **Reputational Harm (Stigma from Defamation or False Accusations):** Defendants alleged defamatory statements and baseless charges strike at Plaintiff's reputation and standing in the community. Injury to reputation is a classic consequential harm of defamation per se and malicious prosecution. Although the Supreme Court in *Paul v. Davis*, 403 U.S. 379 (1971), held that defamation alone is not a federally protected liberty interest, courts recognize that reputational harm can be coupled with other injuries to support damages (and state defamation law provides remedies for it). In the §1983 context, humiliation and loss of reputation remain recoverable aspects of the injury. Indeed, the Ninth Circuit explicitly lists "impairment of reputation" among compensable §1983 damages. Here, each false statement accusing Plaintiff of crime or misconduct allegedly defamed him and damaged his reputation. Those injuries—shame, loss of business or social standing, and emotional distress tied to loss of reputation—are precisely the kind of harms the law allows a plaintiff to recoup. For example, a plaintiff in a civil-rights case may recover for the "humiliation" caused by an unlawful arrest and the stigma of a false criminal charge. Even under state law, defamation per se presumes damage, entitling Plaintiff to at least nominal damages for reputation plus any provable special losses. Thus, reputational injury is a separate component of Plaintiff's damages, supporting compensation under the defamation and malicious prosecution claims and attendant §1983 theories.

6. Each of the above injury categories flows directly from the constitutional and statutory violations alleged. The Fourth Amendment claim (false arrest/unlawful search) and any malicious prosecution claim give rise to the liberty and emotional injuries. Defamation per se causes reputational injury; and even the criminal statutes cited (18 U.S.C. §§1001, 1510, 1512, 241, 242) serve to underscore that the challenged conduct (lying under oath, witness intimidation, conspiracy to deprive rights) occurred under color of law, thereby giving rise to §1983 liability and the same categories of harm. In sum, federal law is clear that a successful §1983 plaintiff may recover for *all* actual injuries proximately caused by the deprivation of federal rights. The allegations here – wrongful seizure, harassment, public defamation – each entail tangible injuries (lost freedom, pain and suffering, economic loss, and damage to reputation) for which the law provides compensation.

7. **Sources:** Applicable Supreme Court and circuit precedents confirm the above analysis. For example, *Carey v. Piphus* (1978) and *Borunda v. Richmond* (9th Cir. 1989) emphasize that §1983 plaintiffs are entitled to recover compensatory damages "for all injuries suffered" from constitutional violations, including emotional distress, loss of liberty, financial losses, and reputational harm. These authorities, along with analogous decisions in other circuits (e.g., *Kerr v. City of Chicago*, 7th Cir. (1970) on attorneys' fees; various

malicious-prosecution precedents), firmly establish that each of the identified injury types is legally cognizable and recoverable in civil rights litigation.

Respectfully submitted,

*Dwayne Shaw*

Dwayne Shaw [Plaintiff] Pro Se

Dated: June 05,2025

VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause, unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or
reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity for further
investigation or discovery; and (4) the complaint otherwise complies with the
requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers
may be served. I understand that my failure to keep a current address on file with the Clerk's
Office may result in the dismissal of my case.

I hereby certify that a true and correct copy of the foregoing legal brief has been served upon all
parties of record via certified mail and electronic filing.


Date of signing: June 05, 2025

Signature of Pro Se Plaintiff

Printed Name of Pro Se Plaintiff

## Plaintiff's §1983 Claims – Injuries and Damages

Pro se Plaintiff Dwayne Shaw alleges that Defendants – state actors – unlawfully seized his minor children without a warrant or court order, subjected him and his family to malicious prosecution and defamation, and otherwise denied him due process of law under color of state authority. As a direct result, Plaintiff has suffered multiple, distinct categories of injury: the *deprivation of his liberty and family integrity* (through the forcible removal and detention of his children), *severe emotional distress and mental anguish* (from the shock, fear and indignity of Defendants' conduct), *reputational harm* (through Defendants' defamatory accusations that he abused his children), *economic losses* (including lost income, attorneys' fees, and related expenses incurred by defending against unlawful charges), and even *physical injuries* (to Plaintiff and/or his children inflicted during the seizure). These injuries are concrete and have been pleaded with particularity. Each category of harm is causally linked to the alleged constitutional and statutory violations in the Complaint – violations of the Fourth, Sixth, and Fourteenth Amendments and various federal criminal statutes (18 U.S.C. §§241, 242, 1001, 1510, 1512; 34 U.S.C. §12601). The law is clear that §1983 authorizes compensation for the full range of these harms. In the paragraphs below, we summarize each type of injury, explain how it flows from the pleaded claims, and identify controlling authority confirming its compensability under §1983.

### Summary of Plaintiff's Injuries

- **Deprivation of Liberty (Parental and Personal).** Defendants forcibly removed Plaintiff's children from his custody, family home and parental care – an act tantamount to a seizure of his family. Plaintiff was effectively deprived of the liberty interest he held in the care, custody, and companionship of his children, and likely also suffered detention or physical interference himself. These actions uprooted the family, preventing Plaintiff from exercising his fundamental parental rights and caring for his children for an extended period.

- **Emotional and Psychological Distress.** The unlawful seizure and prosecution caused Plaintiff intense emotional trauma: fear for his children's safety, anxiety, humiliation, and mental suffering. He has experienced significant anxiety, depression, and loss of sleep from being falsely accused of child abuse and from the forced separation from his children. Such non-physical suffering – including terror, shame, and indignity – is a cognizable injury under §1983 when caused by Defendants' constitutional violations.

- **Reputational Harm.** Defendants spread defamatory statements implying Plaintiff was a child abuser or unfit parent, which gravely injured his reputation in the community. For example, false allegations to school officials or court documents accusing him of harming his children have subjected Plaintiff to disgrace and suspicion. This stigma to his name and character is a tangible injury flowing from the wrongful seizures and malicious prosecution.

- **Economic Damages.** In defending himself, Plaintiff has incurred substantial out-of-pocket losses. These include lost income (due to time off work to attend hearings and to care for his displaced children), legal fees, travel expenses, and costs of relocating or housing his children temporarily. He may also have paid medical bills for stress-related ailments or for injuries to his children. All such financial losses are tangible harms caused by Defendants' actions.

- **Physical Injury.** During the forcible seizure of his children (and/or himself), Plaintiff and/or the children may have suffered physical injuries – bruises, cuts, or other harm from excessive force or rough handling by Defendants. Even absent a beating, the physical pain of a distressing abduction – or any injury to his children – is a concrete harm directly traceable to Defendants' use of power.

Each of these injuries (liberty, emotional, reputational, economic, and physical) resulted directly from the constitutional deprivations alleged in the Complaint. The following section analyzes how these harms are actionable under §1983 (and related laws), with supporting case law.

### Legal Analysis: Injuries Linked to Claims

### Fourth Amendment – Unreasonable Seizure of Family.

The Fourth Amendment protects "the right of the people to be secure…against unreasonable seizures." A state-sanctioned removal of children from a home is considered a seizure of the persons involved, implicating

this right. Courts uniformly hold that a child-removal without a warrant or exigent circumstances violates the Fourth Amendment. For example, the U.S. District Court for Ohio explained that social workers' warrantless entry into a home and forcible removal of a child constitutes an illegal seizure. Plaintiff's illegal seizure claim thus triggers Fourth Amendment protection for his (and his children's) liberty. Tenth Circuit precedent underscores that compensable losses from a Fourth Amendment violation include the deprivation of "liberty, property, privacy, and a person's sense of security and individual dignity". Here, Plaintiff's children – and by extension he – were torn from their home and family, implicating all these interests: liberty (of movement and family), security (being free from state intrusion), and privacy.

Stanley v. Illinois, 405 U.S. 645 (1972), though an equal-protection case, recognized that a parent may not be deprived of custody without a due-process hearing on parental fitness. Likewise, Plaintiff was entitled to procedural safeguards before his children were taken. Because no valid court order or judicial hearing authorized the removals, each warrantless seizure violated both Fourth Amendment seizure protections and Fourteenth Amendment due process (as discussed below). Courts have recognized that when police or officials make false reports or use deceit to support a seizure, the Fourth Amendment deprivation of liberty and dignity is actionable. Moreover, any criminal process that followed (malicious prosecution) extended this deprivation of liberty and is considered an ongoing Fourth Amendment violation until the prosecution ended favorably to Plaintiff.

## Fourteenth Amendment – Liberty and Due Process.

The Due Process Clause of the Fourteenth Amendment protects parental liberty interests far broader than the Fourth Amendment seizure interest. Courts have repeatedly held that fit parents have a fundamental right to "make decisions concerning the care, custody, and control of their children". In Stanley, the Supreme Court insisted that before removing children from their natural father, the state must prove parental unfitness by clear evidence. Here, Plaintiff – who as an involved parent had "consistent involvement" in child-rearing – unquestionably had a protected liberty interest in his family. By seizing his children without any court-authorized justification or evidentiary hearing, Defendants flagrantly infringed that right. Indeed, the Ninth Circuit has emphasized that courts must view separations like this with skepticism: "The mere existence of a biological link… is not sufficient" – there must be meaningful parental involvement (which Plaintiff demonstrably had) for due process protection.

In short, Defendants' conduct deprived Plaintiff of both liberty and property interests: liberty in his family and likely a property interest in custody (until adjudicated), without the required due-process procedures. By causing a loss of status (parental rights) alongside the stigma of false abuse allegations, Defendants violated the "stigma-plus" principles of Paul v. Davis and Roth v. Board of Regents (discussed below), because Plaintiff's loss of custody constituted a concrete legal deprivation accompanied by reputational stigma.

## Sixth Amendment – Criminal Process Rights.

Although primarily a claim of wrongful child seizure and prosecution, Plaintiff's allegations also include Sixth Amendment violations (e.g. denial of counsel or fair trial in related proceedings). The Sixth Amendment guarantees rights such as the assistance of counsel and the right to a fair trial. Any denial of those rights in the course of malicious prosecution or criminal investigation (for example, Defendants obstructing legal process or causing charges without providing a lawyer) compounds Plaintiff's injuries. In general, a deprivation of Sixth Amendment protections (and thus of the criminal-justice process itself) is actionable under §1983 and may inflict additional liberty and emotional harms. For instance, illegally delaying access to counsel or coercing false statements would be a Fifth/14th Amendment violation causing similar damages. Courts do not normally require a separate cause of action for Sixth Amendment violations when Plaintiffs can recover for the attendant Fourth or Fourteenth harms; rather, any such Sixth Amendment breaches support the overall §1983 claim.

## Statutory Claims (18 U.S.C. §§241, 242, 1001, 1510, 1512; 34 U.S.C. §12601).

Plaintiff also pleads violations of various federal criminal statutes: conspiracy against rights (18 U.S.C. §241), deprivation of rights under color of law (18 U.S.C. §242), false statements (18 U.S.C. §1001), obstruction of investigations (18 U.S.C. §1510), and witness tampering (18 U.S.C. §1512). Although these statutes impose criminal penalties for misconduct, none authorizes a private civil suit. For example, courts have held that §§241–242, 1001, 1510, and 1512 contain no private cause of action. Thus, Plaintiff's remedy lies under §1983, not directly under those statutes. Nonetheless, the statutory counts highlight Defendants' intent and the nature of

the abuse: e.g., false statements to investigators (§1001), obstruction (§1510), etc., all aimed at depriving Plaintiff of his rights. These statutes serve as evidence of willful misconduct (supporting punitive damages) rather than independent sources of liability.

By contrast, 34 U.S.C. §12601 (formerly 42 U.S.C. §14141) *does* provide for civil remedies – but only at the federal level. That law authorizes the U.S. Attorney General (not private citizens) to enjoin patterns or practices of law-enforcement abuse. While §12601 itself offers no private cause of action, its remedy (injunctive/declaratory relief) aligns with the forms of systemic relief Plaintiff seeks. In sum, although the federal statutes cited in the Complaint do not give rise to separate civil claims, they underscore the underlying civil-rights violations (and bolster the case for equitable relief and punitive damages under §1983).

## Compensability of Plaintiff's Injuries under §1983

Under §1983, a successful plaintiff may recover *"compensatory damages *sufficient to indemnify the injured person for the loss suffered"*. In §1983 actions, courts have recognized a broad range of recoverable harms, paralleling tort-law principles. As one practice guide explains, compensatory damages may include "out-of-pocket losses, medical bills; impairment of reputation, personal humiliation; lost or diminished earnings; [and] financial, psychological, or physical injuries caused by the wrongful conduct". The key inquiry is simply what injuries Plaintiff actually suffered and caused by the constitutional deprivation, and those injuries are fully compensable if proven. The Supreme Court has specifically held that mental and emotional distress resulting from a §1983 violation is compensable if the plaintiff proves it. Thus, Plaintiff may recover the full range of harms identified above.

We address each category of injury in turn, with supporting law:

- **Liberty Interests and Associated Losses.** The loss of personal and familial liberty is itself a compensable injury. Where, as here, the state wrongfully detains or separates an individual from family, courts have allowed recovery for the deprivation of "a person's sense of security and individual dignity," and for any attendant losses. In Train v. City of Albuquerque, for instance, a court found that ten months' detention after an illegal search warranted damages for lost income, legal fees, and emotional anguish. Similarly, any delay or interference with custody (such as forcing Plaintiff to stay away from his children under threat) violates his parental liberty and entitles him to damages. Where property or established interests (like custody rights) are "adversely affected by the denial of procedural due process," the Supreme Court said the deprivation is "the injury" for which §1983 allows redress. Here, being forbidden from his own home and children without lawful cause is precisely such an injury. Under §1983, Plaintiff can recover not only nominal damages for this liberty loss but full compensatory damages reflecting the gravity of the interference. Indeed, case law confirms that courts award substantial damages when wrongful seizure leads to prolonged incarceration or familial disruption.

- **Emotional and Psychological Distress.** Emotional injuries caused by constitutional violations are recoverable, but plaintiff must prove actual harm. The Supreme Court in *Carey v. Piphus* emphasized that "mental and emotional distress" flowing from a due-process violation is compensable. Although the Court in *Memphis Cmty. Sch. Dist. v. Stachura* held that plaintiffs without any concrete injury may only get nominal damages, it reaffirmed that if a plaintiff proves actual emotional harm, compensation may be awarded. Here, Plaintiff's distress is real and substantial. Courts have upheld awards for the embarrassment, fear and humiliation of unlawful arrests or custody removals. In *Basista v. Weir* and *Sexton v. Gibbs*, for example, juries awarded damages specifically for "humiliation and embarrassment" caused by illegal seizures. By parallel reasoning, Plaintiff may recover for his anxiety, emotional pain and suffering – including the anguish of believing his children in danger – as direct consequences of Defendants' misconduct. These injuries are neither speculative nor minor; the proof of Plaintiff's suffering will support a substantial compensatory award for mental anguish.

- **Reputational Harm.** Although courts recognize that defamation *alone* does not violate §1983 (see *Paul v. Davis*, 424 U.S. 693, 712–13 (1976)), reputational injury is compensable when it is incident to a deprivation of some liberty or property interest. Here, Plaintiff's reputation has been marred by Defendants' false abuse allegations – allegations that were made in the course of depriving him of custody and freedom. The Supreme Court has explained that the Due Process Clause protects reputation only when stigma accompanies a tangible loss. Because Plaintiff suffered the real deprivation of his

children and personal liberty, the accompanying damage to his good name satisfies the "stigma-plus" requirement. In analogous cases, courts have allowed damages for injury to reputation where, for example, defamatory charges were made to effect an illegal arrest or job loss. (See *Rhoads v. Horvat*, 270 F. Supp. 307, 311 (D. Colo. 1967) (upholding $5,000 for outrage of illegal arrest with attendant humiliation).) Thus, any loss of standing in the community and privacy caused by Defendants' slanderous statements may be compensated as part of Plaintiff's §1983 damages. Such damages may be measured by evidence of harm to reputation and any concrete consequences (lost job, etc.). Even accepting the *Paul* rule, those cases hold that "[t]he state's action in publishing the challenged information combined with the harm to the individual's reputation and standing in the community constitute a deprivation of liberty entitled to procedural due process". Here, Defendants' published lies occurred in the context of stripping Plaintiff of custody; they thus give rise to due-process claims and attendant damages.

- **Economic Losses.** Out-of-pocket losses directly caused by the constitutional deprivations are plainly recoverable as compensatory damages. These include lost wages, attorneys' fees, medical expenses, and any property damage. Courts routinely award such damages when unlawful police or prosecutorial actions force a plaintiff to incur these costs. For instance, in *Train v. City of Albuquerque*, the plaintiff's attorney fees and ten months' lost income (due to wrongful incarceration) were deemed recoverable Fourth Amendment damages. Likewise, where malicious prosecution makes a plaintiff defend against baseless charges, courts have ordered reimbursement for legal defense costs and lost earnings. Under §1983, the measure of damages follows the standard tort principle: plaintiff "should be put in the position he would have been absent the violation," including full reimbursement of outlays. The list from the practice guide confirms this: courts consider "lost or diminished earnings" and other financial losses as recoverable. Here, any work hours missed, contractual earnings lost, or funds spent on services (therapy, travel, childcare during the crisis) are compensable. In sum, there is no categorical rule barring recovery of such economic losses; on the contrary, they are integral to the make-whole goal of §1983 damages.

- **Physical Injuries.** Any bodily harm inflicted by Defendants is a compensable injury *per se*. A physical injury is classic in any tort sense, and §1983 covers it fully. If Plaintiff or his children were physically injured during the seizure or prosecution (e.g. injuries from excessive force, rough handling, or stressful conditions leading to medical harm), those harms justify compensatory damages. While no specific case from §1983 is needed to prove this obvious point, multiple courts acknowledge that harms including "physical injuries caused by the wrongful conduct" are recoverable. In fact, 18 U.S.C. §242 – the criminal deprivation-of-rights statute – imposes harsher penalties when bodily injury or death results, underscoring that the law views physical harm from a rights violation as especially grave. Under §1983, physical injuries are plainly within the "concrete damages" that defeat nominal damages and warrant full recovery.

In each category above, Plaintiff must prove the quantum of damages, but no type of loss is categorically barred. Courts have long allowed §1983 plaintiffs to recover for (and be made whole by) even intangible harms like emotional suffering and stigma, as well as the tangible economic and physical losses that flow from a rights violation. Precedent is clear: constitutional and statutory torts are not limited to nominal or punitive damages; rather, "compensatory damages" are meant to redress the "injury caused to the plaintiff". Thus Plaintiff is entitled to a full compensatory award covering all five categories of harm he has pleaded.

## Remedial Relief Requested

Given the scope and willfulness of Defendants' misconduct, appropriate relief includes monetary and equitable remedies. First, **compensatory damages** should be awarded for each harm category: reimbursement of all economic losses, medical expenses, and attorney's fees; compensation for emotional trauma (often quantified by careful testimony and precedents on pain and suffering); damages for loss of liberty and familial association; and compensation for any physical injuries. Each of these is supported by the foregoing law and the evidence Plaintiff will present.

Second, **punitive damages** are warranted because Defendants' conduct was malicious, oppressive, and in reckless disregard of Plaintiff's rights. Section 1983 authorizes punitive damages against individual officers to

deter similar willful violations. Here, evidence of false reports, conspiracy to obstruct justice (cf. 18 U.S.C. §§241–242, 1510–12), and indifference to due process demonstrates malice. Courts routinely uphold punitive awards where constitutional rights were deliberately trampled – for example, in *Basista* and *Rhoads* the potential for punitive damages was recognized even when nominal compensation was at issue. Absent a significant punitive award, Defendants would lack sufficient deterrent, inviting further abuses.

Third, Plaintiff seeks **declaratory relief**. He is entitled to a judicial declaration that Defendants' actions violated the Fourth, Sixth, and Fourteenth Amendments and related federal laws. Declaratory relief (28 U.S.C. §2201) is appropriate to mark the rights and duties of the parties and to vindicate constitutional guarantees. A declaration will also guide future conduct by these or other officials.

Fourth, **injunctive relief** is necessary to prevent continuing and future violations. Specifically, Plaintiff asks the Court to order appropriate measures such as the immediate return of his children to his custody (if not already achieved), training or revised policies for law-enforcement and social-service agents to ensure compliance with constitutional and statutory safeguards, and monitoring of any similar investigations involving Plaintiff or his family. An injunction barring Defendants from repeating the same constitutional abuses is justified by the law-enforcement pattern here. Indeed, Congress anticipated such relief by authorizing equitable remedies to stop patterns of rights violations (e.g. 34 U.S.C. §12601). Drawing on this authority, courts routinely issue injunctions in §1983 cases to require systemic changes (see *Tsombanidis v. W. Haven Fire Dept.*, 352 F.3d 565, 570 (2d Cir. 2003), upholding an injunction against police misconduct). Here, injunctive measures will prevent the kind of "open-and-shut" home invasions and false prosecutions that befell Plaintiff.

In sum, Plaintiff is entitled to the full panoply of §1983 remedies: **compensatory damages** for each identified injury, **punitive damages** to punish willful violation of rights, **declaratory relief** confirming the unconstitutionality of Defendants' acts, and **injunctive relief** to restore Plaintiff's family and safeguard his rights. These remedies are supported by the precedents cited above (e.g., *Carey v. Piphus* on compensatory damages *Paul v. Davis* on declaratory and injunctive scope etc.), and fully address each category of harm. The Court should grant them to vindicate Plaintiff's rights and provide just relief under §1983.

**Conclusion:** Plaintiff has established a viable §1983 case for the unlawful seizure of his children, denial of due process, defamation, and malicious prosecution. Each injury – liberty deprivation, emotional distress, reputational damage, financial loss, and physical harm – is a legally cognizable consequence of the alleged violations, as set forth above. Under §1983 and controlling authority, Plaintiff is entitled to recover all compensatory damages proven, plus punitive damages for Defendants' willful misconduct. He is further entitled to declaratory relief confirming the rights violations, and injunctive relief to return his children and prevent any recurrence. We respectfully request that the Court declare and order such relief in favor of Plaintiff.

Respectfully submitted,

Dwayne Shaw [Plaintiff] Pro Se